Good morning, everyone. Before we begin, I'd like to welcome Judge Seiler from the Sixth Circuit, and thank him very much for coming to sit with us and helping us out. Judge Seiler is from London, Kentucky, and lest you think Ohio or something like that, because I said And we'll take the cases up in the order in which they appear on the docket. U.S. v. Larson has been submitted on the briefs, as has been Jessen v. County of Fresno. So we will start with U.S. v. Garcia. Good morning, and may it please the Court. Jamie Lee Moore, appearing for Javier Garcia. I'll reserve two minutes for rebuttal. The Fourth Amendment protects the right of the people to be secure in their persons' houses, papers, and in facts. And of course, when the police violate the Constitution, the general rule is that evidence seized as a direct result of those constitutional violations is normally suppressed. However, there is an exception, which is the exception that's central to this appeal, and that is the Attenuation Doctrine exception. Now, I think it's worth reading what that doctrine says. It says the evidence is admissible when the connection between the constitutional police misconduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee, the Fourth Amendment in this case, that has been violated, would not be served by suppression of the evidence. I believe that in this particular case, the Fourth Amendment interests are served by suppression because the police misconduct was grossly negligent, reckless, and in flagrant disregard of the Constitution in a multiple number of ways. It was an entry into a home without consent, without an arrest warrant, without a search warrant, without even trying to get consent from someone who came out of the house. They had already apprehended their suspect in a neighbor's yard, so essentially the case was over, but they continued to investigate. So they entered the home in violation of the Fourth Amendment. Was there anyone there to give them permission to go in? There was a woman who exited the home when the police were apprehending the suspect in the neighbor's yard, and the police made no effort to ask her for consent to enter the home. They also didn't ask her whether anyone was inside the home, so they didn't know anybody was in the home. They didn't know my client lived there. They didn't know my client. They didn't know anything about him. They just went into this home. That was grossly negligent and reckless, frankly, and endangered themselves. So they went in, and the first thing they do is arrest my client, three officers with guns drawn, arrest him, put him in handcuffs, and drag him out of his house. So that's the second violation. They essentially arrest him, seize him in his own violation of the Fourth Amendment, and then they proceed to conduct a custodial interrogation without Miranda warnings. Now, they don't know anything about this guy. They don't know his name. They don't know anything about him. He's not posed any danger to them. He is unharmed and unarmed. The police said the reason they went in as a subjective matter was to protect the public and to protect themselves, but once they found out that he was unharmed and unarmed, they didn't end their investigation. Counsel, as you well know, our court has previously ruled that the emergency aid exception and the protective sweep exception did not apply here, and the officers had acted improperly there. So what we're left with is, I guess, Judge Wallace's comment that the attenuation if you will, condition that was in his situation. Would you address that particular situation? I mean, clearly there is a taint, if you will. The only question in my mind is, what role, if any, does this suspicionless search condition play? And if it doesn't, why doesn't it? That's the crux of the matter, Your Honor. The reason it doesn't is because of language I just read, so that the interests protected by the amendment are not vindicated. In other words, the fact that there is a potential intervening circumstance, but we do not concede that it was an intervening circumstance, because an intervening circumstance such as an arrest warrant and strife is very different than a supervised release condition that permits police to have discretion. It's a very different calculus. What might be helpful to me and perhaps my colleagues, there's a three-pronged test to see whether the attenuation doctrine applies. Would you please give us your analysis of the application of that three-pronged test in this case? So first, the temporal proximity. Everyone concedes that the seizure was close in time to the violations. Secondly is the presence of an intervening circumstance. The government contends that the discovery after all of these violations that the individual, Mr. Garcia, was on supervised release constitutes an intervening circumstance. So, let's narrow that. So you say after all the violations. Tell me exactly when they discovered the condition. Yeah, so after they went into the home, seized him, put him in handcuffs, brought him out to the curtilage of the home, patted him down, asked him for his identification, then ran it through the warrant system, found out he was on supervised release, they returned to the house. My contention is that the taint of all those prior Fourth Amendment violations was not dissipated because the flagrancy is so strong in this case, and it's not just one isolated little negligence like there was in Strife where he just didn't have reasonable suspicion and stopped somebody on the street. This is an invasion of a home. This is the chief evil against which the Fourth Amendment was secured. And so that's the very first problem with all of this. And then everything that cascaded after that, all the other violations, just add to the flagrancy, recklessness, open disregard for the Fourth Amendment that these police conducted. Strife was involved in an arrest warrant where the Supreme Court said it was an important element that they had to arrest him. In this case, you have a right, a may, if you will, that the police can do it, but they don't have to arrest him. What role, if any, should that aspect of the case play in our analysis? I think it brings the weight of the intervening circumstance much lower than if it were an arrest warrant. So when you're doing the calculus between the intervening circumstance analysis and the flagrancy analysis, I think you come down in a situation where you have extreme, you know, much lower intervening circumstance weight and much higher flagrancy in this case than you had, for example, in the Strife case. Does that answer your question? Yes, thank you. So as far as the flagrancy goes, there were more points to this. I mean, basically what we get down to is do the benefits of deterrence outweigh the social costs? And in this case, I believe the social costs are extremely low for a number of reasons. First of all, this is a nonviolent crime. Secondly, Mr. Garcia has already served time for his supervised release. So it's not like if he, with a supervised release situation, it's very different than an arrest warrant because the supervised release, he's going to be charged with a violation of that, and the exclusionary rule does not apply in supervised release actions. So it's not like society doesn't get their pound of flesh for the violation. They do, and the exclusionary rule doesn't apply there. If they had known that he was under supervised release, they could have gone in, okay, right, because he gave them permission. If they had known in advance, I think it definitely would have brought the flagrancy prong, the weight would have been much lower. But because they didn't know until after they'd already committed all these violations, it definitely makes the flagrancy stronger. I mean, it equates Mr. Garcia with all of us. I mean, any of us could have been involved in this. What if he hadn't been, you know, subject to supervised release? Then we'd be dealing with a 1983 action. So that's kind of the crux of it. That's the reason why the rights of the Fourth Amendment are vindicated, and I'll reserve the rest of my time. Thank you. Thank you, counsel. Good morning. May it please the Court, my name is Briggs Matheson, and I represent the This Court should affirm the District Court's decision not to apply the exclusionary rule in this case. Police officers discovered the challenged evidence in this case during a lawful search of Mr. Garcia's home only after they learned that Mr. Garcia was on federal supervised release with a search. Wait a minute, wait a minute, wait a minute. I thought that the search of the home was found by our court to be inappropriate. Your Honor, I'm distinguishing between the protective sweep of the home that took place. That's the Fourth Amendment violation. Which was a violation. That was a violation. And also the emergency claim was a violation, right? Correct, Your Honor. The unlawful entry into Mr. Garcia's home was not justified by either the protective sweep or the emergency aid exception. But what justified it? I beg your pardon, Your Honor? What did justify it? Your Honor, the government is not arguing in this appeal that the entry into the home was justified. That has already been found. I thought for a minute you said that they conducted a lawful search of his home. The search of Mr. Garcia's home was authorized by the supervised release search condition that the officers discovered after the welfare check or protective sweep. But hadn't they already gone into the home and they discovered the suspicionless search element afterwards? That's correct, Your Honor. And so the question in this appeal is whether the causal relationship between the Fourth Amendment violation that took place, that's the unlawful entry into the home, and the relationship between that violation and the discovery of the challenged evidence, which came after the discovery of Mr. Garcia's supervised release search condition. Well, don't we in that situation go back to what I asked your opposing counsel about the attenuation doctrine? I gather the government has conceded in this case that there's no exigency. The proximity of the time weighs against admitting the evidence. I gather, I take it, that you also view the, if you will, the flagrancy of the violation as being somewhat suspect. So we really get down to the second element, which has to do with whether or not this is It sounds to me like here you've got all these violations, and then you discover, almost by accident afterwards, that he's got the suspicionless violation. How can we base a sound exclusionary rule on something like that, where after the fact you find the justification for doing what the officers had already done? Let me address that second prong of the analysis first, Your Honor. And I do want to get to the flagrancy issue in just a moment. But with respect to the second factor under the attenuation analysis, the key teaching from Utah v. Strife is that the intervening circumstance needs to be independent from the Fourth Amendment violation at issue. The problem with your reliance on U.S. v. Strife is that that was an arrest warrant, as Judge Smith points out, and the police had no choice whatsoever but to arrest him at that point. It was a mandate for them to act. In this case, they find a condition of supervised release. They don't have to conduct a further search. In fact, there doesn't seem to be in the record any reason for them going back into the house, which leaves open the question, given that it's the government's burden to prove Yes, Your Honor. Okay. Well, what evidence in the record is there that the decision to go back into the house a second time was unrelated to what the police had seen in the house the first time, which was totally unlawful? There is nothing in the record, Your Honor, to suggest that the officers' reasons for acting on the search condition once they learned about it had anything to do with what they encountered during the sweeper. Isn't it your burden to have proven that it was unrelated? I mean, there's nothing that explains why after all these illegal things that they did to Mr. Garcia, they suddenly discover this suspicionless search condition and go racing back into the house. Why? Your Honor, the record is quite complete as far as what the officers did, why they did it, and what they encountered during the protective sweep. The district court found that the officers' motivations for conducting the sweep were based on their genuinely held concerns for the community's safety. The sweep lasted a matter of— You'd be dawed, given that they had already arrested the person who they were chasing by the time they entered the house. Well, Your Honor, that goes a little bit more to the flagrancy analysis, and I think this was a very close case on that question that provoked thoughtful disagreement, even in hindsight, by reviewing judicial officers. But as to your question on the intervening circumstance point, I do want to address the distinction between the search condition here and the arrest warrant. And Utah v. Strife was not limited to preexisting arrest warrants. It didn't suggest that the attenuation analysis— But we would be extending it if we were to follow your view, and I don't see any justification for extending it under the circumstances of this case. I don't think it would be an extension, Your Honor, and here's why. Utah v. Strife rejected adopting per se rules in this context and drawing categorical lines of inclusion or exclusion around what could qualify as an intervening circumstance. And in fact, Brown v. Illinois, which is where the attenuation analysis derives from, also rejected this idea that only certain types of circumstances could intervene. The question, as Utah v. Strife pointed out, is really whether the intervening event had anything to do with the Fourth Amendment violation. And contrary to appellant's characterization of what happened here, this was not a series of violations. There is only one Fourth Amendment violation. Wait a minute. Wait a minute. You keep going back about the officers were motivated by all these good things, but we already talked about the fact that our court, in any event, has found that the two reasons given for going in the House were unconstitutional. They didn't work. That's a lot of the case. You're stuck on that. So they had no legitimate basis for going in the House. They take this guy outside, they run a search, they find out after the fact that he has a Suspicionless Warrant requirement. Only then do they go back in. But basically you've got two unconstitutional acts. Then you have this, quite by accident almost, discovery of the Suspicionless Search. I gather you would agree that if there had not been a Suspicionless Search condition, you would have had no right to go back in, right? Yes, Your Honor. I do want to address that the government is not contending or contesting the Fourth Amendment violation. And it's true that on the objective facts, this court previously found that there was one Fourth Amendment violation that was justified by neither of the two exceptions that Your Honor mentioned. But you keep going back to the idea that they had all good faith and everything, and that's not the case here. I do want to be clear, Your Honor, that the test that applies under the Attenuation Doctrine looks to the subjective purpose behind the officer's conduct. And so even though from an objective standpoint, the officers were not justified in performing the protective sweep or the welfare check, there's no question on this record what motivated the officers in doing so. So you're saying that even though our court found that what they did was unconstitutional, that we can still credit their motives for having done what they did unconstitutionally in our analysis of whether the Attenuation Doctrine applies with respect to the Suspicionless Search? That's correct, Your Honor. And that's what this court articulated in the Frimmel Management case, that the third prong of the Attenuation Analysis looks at the subjective motivations of the officers involved. And that's because the question at this point in this appeal is not whether a Fourth Amendment violation took place. The question is whether the conduct was the type of deliberate or flagrant misconduct that the exclusionary rule is designed to deter or is even capable of deterring. And the Frimmel Management case provides a useful example of that principle and why it doesn't apply in this case. So does Frimmel Management deal with a situation where there were two previous constitutional violations before you get to the subjective analysis of the officers' thinking? Your Honor, Frimmel Management dealt with egregious, what this court described as egregious Fourth Amendment violations, distortions leading to raids for the purpose of conducting an investigation and for triggering investigations by ICE into the targets of that investigation. And that's nothing like the conduct that we have in this case in which the officers conducted the protective sweep for no investigative purpose, not with an idea that they were going to gather incriminating evidence. They didn't know that Mr. Garcia existed, so they hadn't targeted him in any way. And the district court found, in that regard, that this case is even easier than Utah v. Strife because the officers, when they committed the Fourth Amendment violation, the unlawful entry, they did not have in mind violating Mr. Garcia's constitutional rights in any way, whereas in Utah v. Strife, the officer in that case specifically targeted the defendant as part of his investigation into narcotics trafficking. And so in terms of the flagrancy or the purpose behind the conduct in this case, there was no deliberate intent to conduct any sort of investigation. All right. I have two quick questions. Yes, Your Honor. The first one is whether it is your position that even if something that the police officers saw in the first illegal search influenced their decision to conduct the second search pursuant to the supervised release condition, that it's still constitutional? Yes, Your Honor, and here's why. The record is clear that all— The record—that's a pretty extreme position. I'm sure that's not what the attenuation doctrine stands for. Let me explain why. I assume that my time is up. No, I'm asking you a question. I'm running the court, so answer it. This court explained in United States v. Smith that if all a Fourth Amendment violation leads to is the uncovering of a suspect's identity or factors into law enforcement's decision to target a particular defendant— that's the language that Smith uses, to target a particular defendant— that is not sufficient to say that the Fourth Amendment violation thereby tainted the later discovery of evidence. And that's especially the case when you have an intervening circumstance like the one we have here, where there's a search condition that authorizes the officers to search Mr. Garcia and his home for any reason or no reason whatsoever. And so on this record, which the parties agreed on remand, was very complete and there was no need for further evidentiary findings. On this record, the only information that the officers learned during the protective sweep was that Mr. Garcia existed inside the house. And so for that fact to have factored into the decision to conduct the later search and to find that that in turn warranted suppression would be to reduce the test to an impetus type or but-for causation test. And Smith instructs that attenuation is at its core the manifestation of the court's rejection, consistent rejection of a but-for cause type of analysis in this context. Okay. My second question has to do with consent. Did the officers ask Mr. Garcia for consent to enter the house at any point before they entered? I don't believe they did, Your Honor. And is there any evidence in the records of why they didn't simply just ask him for consent? No, Your Honor. My understanding based on this record is that everything the officers did, and this was the testimony that was credited by the district court, is that the officers were conducting the protective sweep and trying to secure the scene out of their concerns for safety. They didn't ask for consent to enter the home. The second time, before the second time? At either point. At any point. Correct. All right. Thank you very much, counsel. Thank you, Your Honor. Yes. To answer your question, Judge Wardlaw, about whether or not there was any connection between the protective sweep, the initial sweep, and the subsequent searches, I think there is a connection. When they conducted that protective sweep, they didn't find anything. There was nothing at all to be found. And so when they go back outside and they're now patting Mr. Garcia down and asking him his name and running his search, they're obviously investigating him at this point, and they have absolutely no basis to investigate him. There's no reasonable suspicion, no probable cause, no warrants, no anything. So they were obviously trying to find additional evidence and people to arrest. So I think there is definitely a connection there. With regard to whether or not the point about supervised release being discretionary, even the district court acknowledged that the police had discretion and that it wasn't a mandatory arrest warrant situation, and that's at ER 320. So as far as Utah v. Strife and the calculus, I think that there's a tendency to say, well, if there's an intervening circumstance, that's the end of the analysis. That isn't the end of the analysis. Utah v. Strife is not applicable here because the calculus of the intervening circumstances, which in that case were strong, versus the flagrant misconduct, which was extremely low, is very different and almost directly opposite to what we have here. As far as it being a subjective or objective analysis, I think it's pretty clear from the case law that it is an objective analysis. But even if we look at the subjective intentions of these officers, the facts belie their subjective intent. I mean, they say they went in to protect whoever might be inside and to protect bystanders, but they didn't stop their investigation once they discovered Mr. Garcia was unharmed and unarmed. And FRIML is completely inapplicable. In that case, the court didn't even consider whether or not the officer's subjective intentions in determining whether or not the officer's conduct was flagrant. Thank you. Thank you very much, counsel. U.S. v. Garcia will be submitted. We will take up U.S. v. Dixon next.
judges: Siler, Wardlaw, M. Smith